# Riverton Water Company, Appellant, *v.* R. H. Hummel.

*Corporation—Subscription to stock—Contract—Water company.*

The promoters of a water company entered into an agreement with a firm of contractors by which the former agreed to incorporate a water company, and the latter agreed to construct the water works and take a certain amount of cash and a certain amount of stock in the corporation for their compensation. The corporation was formed, and one of the promoters subscribed for a large amount of stock He paid for a part of the stock in cash, receiving a certificate therefor. He received a certificate for the remaining shares, and immediately assigned it to the contractors to whom it was handed by the secretary of the corporation in part payment for the plant of the water works. The corporation subsequently brought suit against the subscriber to this stock to recover the amount of his subscription. At the trial the court overruled the several offers of evidence by the corporation tending to show that the work of the contractors was defective. *Held,* (1) that the evidence was properly rejected; (2) that the corporation received from defendant the full amount of the stock sub-

scription; (3) that as the corporation had accepted and held the completed works, it used the stock from the defendant for payment for the works, and if the plant was defective it was the fault of the contractors, and not of the defendant.

Argued April 30, 1896. Appeal, No. 292, Jan. T., 1896, by plaintiff from judgment of C. P. Cumberland Co., Sept. T., 1895, No. 351, on verdict for defendant. Before GREEN, WILLIAMS, McCollum, DEAN and FELL, JJ. Affirmed.

Assumpsit on subscription to the stock of a corporation. Before BIDDLE, P. J.

The material facts will be found in the charge of the court.

At the trial it appeared that the stock which had been issued to defendant and not paid for had been, immediately upon the issuing of the certificate, assigned to Smith, Tate & Co., the contractors, who constructed the water plant for the corporation, and that they took it as part compensation for their work, in accordance with the terms of their contract with the corporation. The plaintiff offered, under objection and exceptions, evidence tending to show that the water works built by the contractors were defective. The court rejected the several offers and sealed bills for plaintiff (1–3).

The court charged as follows :

A number of points have been presented to the court, both by the plaintiff and defendant, and after a very careful consideration of the whole case, we have come to the conclusion that the last point of the defendant must be affirmed, and therefore it is unnecessary for us to specifically refer to the other points. That which we affirm is as follows: " On the whole evidence, the verdict should be for the defendant."

On May 9, 1892, the Hummel heirs, of whom the defendant was one, being desirous to organize a company for the purpose of supplying the inhabitants of Riverton and vicinity with water, entered into a written article of agreement with Smith, Tate & Company for the purpose of effecting that object. The Hummel heirs agreed therein that they would proceed immediately to procure a charter for a company, to be known as the Riverton Water Company, with other stipulations, and Smith,

Tate & Company covenanted to construct the plant as specified in the agreement for a consideration of $40,000, to be paid as follows: $5,000 to be paid within two days after the agreement was signed; $5,000 when the work was completed, and the reservoir pumped full of water, and the remaining $30,000 to be paid in stock when the work should be completed. Articles of association for the incorporation of the Riverton Water Company were signed and acknowledged on May 9, 1892, and a charter was granted to the said company on June 2 following. That the articles of association were acknowledged before the recorder of Dauphin county, and not entered of record in this county until October 31, 1893, we do not regard as material in this issue.

The capital stock of the company was fixed at $40,000, divided into eight hundred shares at a par value of $50.00 each. The subscribers to the stock and the number of shares subscribed for by them respectively was as follows:

R. H. Hummel, the defendant in this case, 395 shares.

Valentine Hummel, 394 shares.

John A. Herman, 5 shares.

Paul A. Kunkle, 5 shares.

William M. Hain, 1 share.

On January 7, 1893, at a meeting of the stockholders, a motion was adopted authorizing the company to deliver to Smith, Tate & Company, contractors, $5,000 of the stock of the company, in addition to the $30,000 of the stock which was agreed to be delivered by the contract of May 9, 1892, in payment for the erection of the water works, so that they should receive $35,000 in stock, instead of $30,000 in stock on account of the $40,000 consideration mentioned in said contract. Accordingly on January 12, 1893, a written agreement, which is in evidence, embracing the terms of said motion, was duly executen by the Hummel estate and the Riverton Water Company, of the first part; and Smith, Tate & Company, of the second part. Two days later, the agreement was ratified at a meeting of the stockholders, and copied in full upon the minutes. Three hundred and ninety-five shares of stock were issued in the name of R. H. Hummel, the defendant, being the number subscribed for by him, and on January 19 one hundred and fifty of said shares were delivered to him as his own property. Certificates

for the remaining two hundred and forty-five shares were, on that date, handed to him by the secretary, and he at once assigned the same by indorsement to Smith, Tate & Company, and handed them to the secretary, who immediately delivered them to Smith, Tate & Company, in part payment by the Riverton Water Company of the consideration for the construction of the water works, as specified in the agreement of January 12. Of the one hundred and fifty shares received and retained by the defendant, one hundred shares had been paid for by the Hummel heirs in cash to the treasurer of the company, and the other fifty shares were retained by him under a supposed agreement with Smith, Tate & Company, but he subsequently paid that firm for the same, after a verdict in their favor, and this stock was credited to the water company on the contract.

No fraud on the part of the defendant is shown or indicated, except in relation to the fifty shares retained from the contracts, which he subsequently paid for as aforesaid, and we know of no rule of law upon which he can be held liable to the Riverton Water Company, under the evidence adduced, or proposed to be adduced, in the case.

The contract with Smith, Tate & Company may have been a disadvantageous one to the Riverton Water Company, but the stockholders were all satisfied with it at the time, and both authorized it and ratified it, and the company is not now in a position to complain of their action.

The testimony produced on behalf of the defendant is not controverted or denied, and must be taken as true, for there is nothing in the case which would warrant a disbelief of it.

The questions for solution are therefore solely legal ones, and are determined by the court in favor of the defendant. [It will consequently be your duty to render a verdict in his favor.] [7]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (1–3) rulings on evidence, quoting the bill of exceptions ; (7) above instructions, quoting them.

*W. F. Sadler* and *John Hays, John E. Fox* with them, for appellant.—The subscription of Hummel, the defendant, was absolute and unqualified. The directors are trustees for stock-

holders. It is not in their power to release a subscriber to stock from liability except upon payment, much less if he be one of the board: Bedford R. R. v. Bowser, 48 Pa. 29; McElheny's App., 61 Pa. 188; Simons v. Vulcan Oil & Mining Co., 61 Pa. 202; Boynton v. Hatch, 47 N. Y. 225.

Gross overvaluation is strong evidence of fraud: Coit v. Amalgamating Co., 119 U. S. 343.

The word "nonassessable" upon a certificate of stock does not cancel or impair the obligation to pay the amount due upon shares created by the acceptance and holding of such certificate: Upton v. Tribilcock, 9 U. S. 45; Shannon v. Stevenson, 37 W. N. C. 537.

It may be conceded that if the company had no other stockholders than those who participated in the meetings of January 7 and 14, 1893, that the company could not complain, and that its stockholders would be bound by them, and could not compel the company to take a course which would be a repudiation of their action: Knopp v. Bomrich, 49 N. J. Eq. 82. But such is not the case as to persons who subsequently purchased stock of the corporation. The incoming subscribers are entitled to a bona fide payment of the subscriptions made by the promoters and incorporators; Bailey v. Connellsville Gas Coal etc. Co., 69 Pa. 342; Miller v. Hanover Junction etc. R. R., 87 Pa. 99; Caldwell v. Boyd, 57 Pa. 326.

The promoters of a corporation have no authority to enter into preliminary contracts binding the corporation when it shall come into existence. To do this an adoption of the contract subsequent to the charter of the corporation, or the making a new one between it and Smith, Tate & Company, is requisite: Bell's Gap R. R. v. Christy, 79 Pa. 54; Munson v. S. G. & C. R., 103 N. Y. 75; Penn Match Co. v. Hapgood, 141 Mass. 145; Kelner v. Baxter, 2 Law Rep. C. P. 173; Knopp v. Bomrich, 49 N. J. Eq. 82.

*Lyman D. Gilbert* and *J. W. Wetzel*, for appellee.—It would have been highly inequitable and unjust to say that Mr. Hummel should pay for his stock after having turned it over to the company, and the company to the contractors, because some interested expert should say the plant was not worth the par value of the stock.

PER CURIAM, May 25, 1896:

As between the plaintiff and the contractors who built the water works, the stock which was received from the defendant extinguished the liability of the plaintiff to the contractors, to the full extent of the $30,000 item of stock which was to be paid to the contractors. This stock came from the defendant, and whether it was intrinsically worth that amount of money is immaterial, because the plaintiff did in fact use it to its full nominal value. So far as the present action is concerned, it is equally immaterial to inquire whether the work of the contractors was well or ill done, and therefore the several offers of testimony made by the plaintiff on the trial were properly rejected.

As the plaintiff actually did receive, in the manner stated, from the defendant, the full amount of his stock subscribed, it is difficult to understand upon what principle the present action can be sustained. The company certainly did participate in the contract with Smith, Tate & Co. for the construction of the works, and did accept and hold the completed works after they were finished, and they certainly did use the stock received from the defendant for that purpose. If the work was defectively done it was the fault of the contractors and not of the defendant, and there would be no justice in holding him responsible on that account, or in compelling him to pay to the plaintiff a greater sum for his stock than he had ever agreed to pay.

Judgment affirmed.